ALBERT METZLER ET AL. V. J. O. JOHNSON.

No. 11.

1. **State School Land—Invalid Purchase.**—K. purchased a section of State school land under the Act of 1887. His application and affidavit therefor represented him to be an actual settler. He was not in fact an actual settler, nor had he purchased the land in good faith. *Held,* such purchase conferred no title on him, nor on his assignee, against one who afterward settled on the land and duly applied to purchase it.

2. **Same—Forfeiture not Requisite.**—Such purchase and sale did not interpose a legal obstacle to another purchaser who came within the provisions of the law. The first purchaser should be held to a compliance with the terms of his purchase in order to hold the land from other purchasers; and whether he has done this or not can be contested in the courts at any time before the final proof is made. A subsequent purchaser is not bound to wait for the State to obtain a judicial forfeiture of the prior fraudulent purchase.

3. **Same—Possession and Tender—Trespass to Try Title.**—J. actually settled on the State school land fraudulently purchased by K. as above stated, and duly made application to purchase the same from the State, tendering the first payment therefor, which was refused because of the prior sale to K. *Held,* that such possession and tender entitled J. to sue K., and M., his assignee, in trespass to try title, and to recover judgment for the land.

APPEAL from Archer. Tried below before Hon. P. M. STINE.

The opinion states the case.

*R. F. Arnold* and *Walton, Hill & Walton,* for appellants.—The evidence wholly fails to support the verdict, which should have been for defendants, they having shown good defense and the plaintiff having failed to show any title. Sayles' Civ. Stats., arts. 4040–4046; Ramsey v. Medlin, 55 Texas, 250.

*F. E. Dycus,* for appellee.—The appellant having falsely represented his settlement, and having failed to occupy the land, it was subject to be appropriated by appellee, he having settled on it as a home. Sayles' Civ. Stats., arts. 4046–4048; Burleson v. Durham, 46 Texas, 152; Calvert v. Ramsey, 59 Texas, 490; Act of April 1, 1887.

HEAD, Associate Justice.—On December 17, 1887, one George G. Koenig forwarded his application, affidavit, obligation, and first payment to purchase section 14, block 1, containing 640 acres of the public school land, under the Act of 1887 providing for its sale.

This affidavit, application, and obligation were received by the Commissioner of the General Land Office and the land awarded to Koenig, to take effect as of the date aforesaid. Koenig's application and affidavit represented himself as an actual settler, and stated that he desired to purchase the land for a home in compliance with the provisions of the act.

The verdict of the jury, as we think upon sufficient evidence, establishes that Koenig was not a settler within the meaning of the law, and did not purchase for the purpose of making the land his home.

Appellant Metzler claimed under Koenig.

In 1888 appellee Johnson actually settled upon the land for the purpose of making it his home, as established by the verdict of the jury upon sufficient evidence, and attempted to purchase the same under the law in good faith for a home. Johnson forwarded all necessary papers to the Commissioner of the Land Office, and his first payment to the Treasurer, these papers being in form in compliance with the law under which he was seeking to purchase. The Commissioner declined to award him the land because of the previous sale to Koenig, and directed the Treasurer to return appellee's money to him, which was done.

Appellee has been in possession of the land, living thereon and cultivating it as a home, ever since he settled thereon as aforesaid, and in February, 1889, filed his petition in the form of trespass to try title against appellant Metzler, and thereafter made Koenig a defendant.

The case was submitted by the court to the jury upon the issue as to whether or not Koenig in good faith was a settler upon the land and purchased the same for a home within the meaning of the law. Verdict and judgment were rendered in favor of the appellee upon this issue, from which this appeal is prosecuted.

From the foregoing findings of fact it will be seen that the first and most important question for us to decide is as to whether or not the fact that Koenig did not in good faith intend the land in controversy as a home, but was seeking to acquire it in fraud of the law, which allowed sales to be made to actual settlers only, could be taken advantage of by appellee after Koenig's obligation and first payment had been accepted by the Commissioner of the General Land Office, and before a forfeiture had been declared against him by the proper authorities. In other words, are the qualifications of a proposed purchaser of public school lands under the Act of 1887, and the subsequent compliance with the terms of his purchase as to the three years occupancy, solely questions between such purchaser and the State, or can they be inquired into before the issuance of the patent by others who may wish to become bona fide purchasers in

compliance with the terms of the law? We have had great difficulty in solving this question to our satisfaction. A long line of decisions in this State has settled the law to be, that where the State has issued a grant, it alone can ordinarily have a forfeiture declared for a failure to comply with the terms of the grant. Luter v. Mayfield, 26 Texas, 325; Bowmer v. Hicks, 22 Texas, 162; Johnston v. Smith, 21 Texas, 729, and numerous other cases. And in quite a recent case the subject of the forfeiture of a charter granted a railroad by the State has been under investigation by our Supreme Court, and the familiar principle affirmed that a cause of forfeiture can not ordinarily be taken advantage of by a third party until the State has acted in the matter. Railway v. The State, 81 Texas, 595. The difficulty, however, is to determine as to whether or not these principles apply to the case at bar, and we have arrived at the conclusion that they do not.

The law under which this sale was made provides, that ''All sales shall be made by the Commissioner of the General Land Office or under his direction, and he shall prescribe suitable regulations whereby the purchasers shall be required to reside upon as a home the land purchased by them for three consecutive years next succeeding the date of their purchase. ` * * * Any person desiring to purchase land in accordance with the provisions of this act shall forward his application to the Commissioner, particularly describing the land sought to be purchased, which application shall in all cases be accompanied with the affidavit of the applicant in effect that he desires to purchase the land for a home, and has in good faith settled thereon; and he shall also swear that he is not acting in collusion with others for the purpose of buying the land for any other person or corporation, and that no other person or corporation is interested in the purchase save himself. The purchaser shall transmit to the Treasurer of the State one-fortieth of the aggregate purchase money for the particular tract of land, and send to the Commissioner his obligation to the State, duly executed and binding the purchaser to pay to the State on the first day of August of each year thereafter, until the whole purchase money is paid, one-fortieth of the aggregate price, with interest from date at the rate of 5 per cent per annum on the whole purchase money; and upon receipt of one-fortieth of the purchase money by the Treasurer and the affidavit and obligation aforesaid by the Commissioner, the sale shall be deemed and held effective from the date the affidavit and application are filed in the General Land Office.''

It will thus be seen that while by the terms of the law the Commissioner is to make the sale, yet there is nothing in fact to be done by him save receiving the application, affidavit, and obligation of the proposed purchaser. He is nowhere given discretion to accept or reject these papers. The sale is really made by the purchaser accepting the proposition made by the law. This proposition is one made to persons of a certain class, namely,

those who purchase the land for a home and have in good faith settled thereon.   No other class of persons have the right to accept this proposition made by the law, and even if the Commissioner desired to accept a proposition from some one who did not propose to make the land his home, he had no power to do so in making the sale.   The whole power of the Commissioner is exhausted when he receives the papers accepting the proposition made by the law.

In submitting the case to the jury the court instructed them as follows :

" First.  If George Koenig settled upon the land in controversy in good faith, and if he made application for the purchase of said land for the purpose of a home, and if he so resided upon and improved the land at the time of plaintiff's application to purchase, and if defendant bought said land from Koenig in good faith for the purpose of a home and with the intention of residing thereon, then defendant is entitled to recover.

" Second.  If you find from the evidence that said Koenig did not settle upon the land in controversy in good faith for the purpose of a home, or if said Koenig was not residing upon the land at the date of plaintiff making application to purchase and taking possession of the land in controversy, and if plaintiff settled upon the land in controversy under application to purchase the same in good faith for the purpose of a home, you will find for plaintiff."

The verdict in favor of plaintiff under the evidence established in effect that Koenig at the time he made application to purchase the land under the law above set forth did not do so in good faith with the intention of making his home thereon; and that he was not residing upon the land, and in fact had never resided thereon at the time of plaintiff's attempted purchase, which was several months after Koenig's application. Baker v. Millman, 77 Texas, 47.

We believe, therefore, that the court was correct in holding that under these circumstances Koenig was not one of the persons who has a right to accept the proposition made by the law, and his false affidavit and application (as established by the verdict of the jury), with the execution of the obligation and making the first payment as required by the law, did not interpose a legal obstacle to another purchaser who came within the provisions of the law, and who proposed in good faith to comply therewith.   Martin v. Brown, 62 Texas, 469.

We believe the rights of different parties attempting to purchase the same land under the provisions of this law should be treated as being more in analogy to the rights of different locators upon vacant land previous to the issuance of patent, rather than upon the principles governing a forfeiture after the issuance of a grant, and we believe the courts have uniformly been open to the investigation of the respective priorities of persons of the first class.

In providing for the forfeiture of land purchased under this law·the act says: "If upon the first day of August of any year the interest due upon any obligation remains unpaid, the Commissioner of the General Land Office shall endorse on said obligation 'land forfeited,' and shall cause an entry to that effect to be made on the account kept with the purchaser, and thereupon said lands shall be forfeited to the State without the necessity of re-entry or judicial ascertainment; * * * and if any purchaser shall fail to reside upon and improve in good faith the land purchased by him, he shall forfeit said land and all payments made thereon to the State, and such land shall be again for sale, as if no such sale and forfeiture had occurred."

As to what would be necessary in a case where a settler had made his purchase in good faith under the law, and after residing upon the land for a time had abandoned the same, in order to again open the land for purchase under above provision of the law, we hardly think it necessary for us to decide, as the jury under the evidence must have concluded that Koenig never at any time intended to settle upon the land and make it his home within the meaning of the law.

We believe, however, if the wording of the charge of the court quoted above should make a decision of this question necessary, the better opinion would be to hold, that inasmuch as the sale is between the law and the proposed purchaser, the latter should be held to a compliance with the terms of his purchase in order to hold the land from other purchasers, and as to whether he has done this or not can be contested in the courts until the final proof is made, upon the same principles that other attempted appropriations of public land can be so contested. The forfeiture provided for a failure to properly return the field notes of a survey under the Act of 1852, in order to open the land to other locators, is declared in language but little differing from the forfeiture declared for a failure to reside and improve under this act; and under the former act the right of a subsequent locator to contest in the courts as to whether it had been complied with was well settled. Upshur v. Pace, 15 Texas, 531; Johns v. Pace, 26 Texas, 271.

If we are correct in the foregoing conclusions, it follows that the judgment of the court below should be affirmed. The evidence is undisputed, that the appellee, Johnson, was a settler in good faith, and had complied with the provisions of the law so as to entitle him to the land if the prior attempted purchase by Koenig did not give the claim under him a better right; and we believe if Johnson had the right to make his purchase under the law, the Commissioner had no power to deny him this right by refusing to accept his application, and that this attempt to purchase on his part, coupled with his actual possession, entitled him to the judgment he obtained. Cattle Co. v. Bacon & Graves, 79 Texas, 12.

We believe upon the whole case the judgment of the court below should be affirmed, and it is so ordered.

*Affirmed.*

Delivered October 25, 1892.